IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | Case No. 09-CV-602-GKF-FHM |
| ABERCROMBIE & FITCH STORES, Inc., an Ohio Corporation, d/b/a abercrombie, | ) ) ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Abercrombie &

Fitch Stores, Inc. hereby respectfully moves this Court to enter summary judgment in its favor

and against Plaintiff Equal Employment Opportunity Commission on the grounds that there

exists no genuine issue of material fact and Defendants are entitled to judgment as a matter of

law.  A Memorandum in Support of this Motion is attached hereto.

Respectfully Submitted,

*s/ Mark A. Knueve*
Mark A. Knueve (Ohio Bar No. 0067074)
Daniel J. Clark (Ohio Bar No. 0075125)
Joseph C. Fungsang (Ohio Bar No. 0085751)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6387 (phone)
(614) 719-4808 (facsimile)
maknueve@vorys.com (e-mail)
djclark@vorys.com (e-mail)
jfungsang@vorys.com (e-mail)
*Admitted Pro Hac Vice*

Kristen L. Brightmire, OBA No. 14239
DOERNER, SAUNDERS, DANIEL &
ANDERSON, LLP
Williams Center Tower II
Two West Second Street, Suite 700
Tulsa, OK 74103-3725
(918) 591-5204 (phone)
(918) 925-5204 (fax)
kbrightmire@dsda.com (e-mail)

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................ 2

III.    ARGUMENT .................................................................................................. 8

        A.      Summary Judgment Standard ................................................................ 8

        B.      Abercrombie is Entitled to Summary Judgment on Plaintiff's Title VII
                Failure to Accommodate Claim ............................................................ 8

                1.      The EEOC has not established a prima facie case because Elauf
                        failed to notify Abercrombie that her religious beliefs conflicted
                        with Abercrombie's policy ........................................................ 9

                2.      Even if Elauf had given notice, the only accommodation the EEOC
                        requests creates an undue hardship ........................................ 12

                        a.      Noncompliance with the Look Policy would harm the
                                Abercrombie brand, and thereby create an undue hardship.......... 14

                        b.      Making an exception to the Look Policy would require
                                Abercrombie to eliminate an essential function of the
                                Model position ............................................................. 16

                        c.      Allowing an exception to the Look Policy would interfere
                                with enforcement of the Policy .................................... 17

IV.     CONCLUSION.............................................................................................. 19

CERTIFICATE OF SERVICE ................................................................................ 20

i

TABLE OF AUTHORITIES

PAGE

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................. 8

Anheuser-Busch, Inc. v. VIP Products, LLC, 666 F. Supp. 2d 974 (E.D. Mo. 2008) ................. 16

Averett v. Honda of America Mfg., 2010 U.S. Dist. LEXIS 11307 (S.D. Ohio 2010) ............... 10

Baaqee v. Brock & Belving Construction Co., 2000 U.S. Dist. LEXIS 9862 (S.D. Al. 2000) ....................................................................................................................... 11

Buckles v. First Data Res., Inc., 176 F. 3d 1098 (8th Cir. 1999) .................................... 16

Cary v. Carmichael, 908 F. Supp. 1334 (E.D. Va. 1995), *aff'd*, No. 95-3154, 1997 U.S. App. LEXIS 15168 (4th Cir. June 23, 1997) .............................................. 10, 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................ 8

Chalmers v. Tulon Co., 101 F. 3d 1012 (4th Cir. 1996), *cert. denied*, 522 U.S. 813 (1997) ...................................................................................................................... 11

Cloutier v. Costco Wholesale Corp., 390 F. 3d 126 (1st Cir. 2004) ................................. 13, 17, 18

Cook v. Chrysler Corp., 981 F. 2d 336 (8th Cir. 1991) ................................................ 16

Cruzan v. Minneapolis Public School System, 165 F. Supp. 2d 964 (D. Minn. 2001) ............... 10

Cruzan v. Special Sch. Dist. # 1, 294 F. 3d 981 (8th Cir. 2002) .................................... 10

Daniels v. City of Arlington, 246 F. 3d 500 (5th Cir. 2001) .......................................... 13

E.E.O.C. v. Convergys Customer Management Group, Inc., 491 F. 3d 790 (8th Cir. 2007) ....................................................................................................................... 16

EEOC v. Geo Group, Inc., 616 F. 3d 265 (3d Cir. 2010) .............................................. 13

EEOC v. Kelly Services, Inc., 598 F. 3d 1022 (8th Cir. 2010) ...................................... 13

EEOC v. Sambos of Georgia, Inc., 530 F. Supp. 86 (N.D. Ga. 1981) ............................... 13

Hussein v. The Pierre Hotel, 2001 U.S. Dist. LEXIS 4859 (S.D.N.Y. 2001), aff'd, No. 01-7673, 25 Fed. Appx. 84 (2d Cir. Feb. 7, 2002), *cert. denied*, 537 U.S. 978 (2002) ...................................................................................................................... 10

Lee v. ABF Freight Sys., 22 F. 3d 1019 (10th Cir. 1994) ............................................ 12

Mason v. Avaya Communs., Inc., 357 F. 3d 1114 (10th Cir. 2004)............................................. 16

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ...................................... 8

Reed v. The Great Lakes Companies, 330 F. 3d 931 (7th Cir. 2003)........................................... 10

Rocky Mountain Rogues, Inc. v. Town of Alpine, 375 Fed. Appx. 887 (10th Cir. 2010) ...................................................................................................................................... 8

Sanchez-Rodriguez v. AT&T Wireless, 728 F. Supp. 2d 31 (D.P.R. 2010) ................................ 13

Thomas v. National Association of Letter Carriers, 225 F. 3d 1149 (10th Cir. 2000) ................... 9

Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977).................................................. 13

Webb v. City of Philadelphia, 562 F. 3d 256 (3d Cir. 2009)........................................................ 13

Wilkerson v. New Media Technology Charter School Inc., 522 F. 3d 315 (3d Cir. 2008) ...................................................................................................................................... 11

## STATUTES

42 U.S.C. 2000e(j) .................................................................................................................... 13

## RULES

Fed. R. Civ. P. 56(c) ................................................................................................................... 8

## OTHER AUTHORITIES

EEOC COMPLIANCE MANUAL, § 12-IV (A) (July 22, 2008) ......................................................... 9

PRE-EMPLOYMENT INQUIRIES AND RELIGIOUS AFFILIATION OR BELIEFS, http://eeoc.gov/laws/practices/inquiries_religious.cfm ........................................................... 12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                                                        )
            PLAINTIFF, )
                                                        )
vs. )
                                                        )      Case No. 09-CV-602-GKF-FHM
ABERCROMBIE & FITCH STORES, Inc., )
an Ohio Corporation, d/b/a abercrombie, )
                                                        )
            DEFENDANT. )

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

The EEOC alleges that Abercrombie & Fitch Stores, Inc. unlawfully failed to reasonably accommodate Samantha Elauf's religious beliefs when it failed to hire her into a "Model" position. Abercrombie now moves for summary judgment on the EEOC's claim on the basis that there is no genuine issue of material fact, and the EEOC's claim fails as a matter of law.

Elauf's own deposition testimony establishes the following undisputed facts:

- On June 27, 2008, Samantha Elauf interviewed for a position as a "Model" at the abercrombie store in the Woodland Hills Mall in Tulsa, Oklahoma. Elauf Dep. 53.[1]

- Elauf's friend, Farisa Sepahvand, who is Muslim, was already working at the store at the time that Elauf applied. Elauf Dep. 44.

- A "Model" at Abercrombie must comply with Abercrombie's Appearance/Look Policy (the "Look Policy"), which requires Models to wear clothes that are similar in

---

[1]  The cited to pages of Samantha Elauf's deposition are attached as Exhibit A and are referred to herein as "Elauf Dep. ___." The cited to pages of Kalen McJilton's deposition are attached as Exhibit B and are referred to herein as "McJilton Dep. ___." The cited to pages of Deon Riley's deposition are attached as Exhibit C and are referred to herein as "Riley Dep. ___." The cited to pages of Heather Cooke's deposition are attached as Exhibit D and are referred to herein as "Cooke Dep. __." The cited to pages of Randall Johnson's deposition are attached as Exhibit E and are referred to herein as "Johnson Dep. ___."

style to the clothing that Abercrombie sells, which is form-fitting, casual and preppy. Elauf Dep. 47, 50; McJilton Dep. 50.

- Elauf knew prior to her interview that Models at Abercrombie were required to dress a certain way.  She also knew that Models were prohibited from wearing the color black on the sales floor.  Elauf Dep. 50, 56-57.

- Elauf wore a headscarf (a "hijab") to her interview on June 25, 2008.  Despite knowing that Abercrombie prohibited the color black on the sales floor, Elauf wore a black hijab to her interview.  Elauf Dep. 57, 63.

- Abercrombie has never sold a headscarf, and prohibits headwear from being worn on the sales floor.  Elauf conceded that her hijab was inconsistent with Abercrombie's style.  Riley Dep. 95; Elauf Dep. 117-18.

- During the interview, the interviewing manager, Heather Cooke, told Elauf about Abercrombie's Look Policy.  Cooke also asked Elauf if she had any questions.  Elauf asked no questions, never mentioned her hijab or her religious beliefs, and never requested a religious accommodation.  Elauf Dep. 63-65; Cooke Dep. 78.

- Elauf was not compliant with the Look Policy during her interview and was not hired. Elauf Dep. 63; Johnson Dep. 44.

These undisputed facts require summary judgment to be entered in Abercrombie's favor.

The EEOC's claim fails because: (1) Elauf failed to provide notice sufficient to trigger Abercrombie's duty to discuss a reasonable accommodation with her; and (2) the exception to the Look Policy that Elauf (after the fact) claims that she should have been provided would have created an undue hardship on Abercrombie's business.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Abercrombie & Fitch Stores, Inc. ("Abercrombie") operates retail stores across the country under a variety of brand names, including Abercrombie & Fitch and abercrombie.  The target customer of Abercrombie & Fitch is age 18 to 22, and the target customer of abercrombie is age 8 to 16.  Joachimsthaler Decl. ¶ 26.[2]

---

[2]  Dr. Erich Joachimsthaler is one of the nation's foremost experts on marketing and branding. Joachimsthaler Decl. ¶ 2, 8.  The Declaration of Dr. Joachimsthaler's is attached as Exhibit F and is referred to herein as "Joachsthaler Decl. ___."

2.     The Abercrombie & Fitch brand is characterized as "New England preppy cool" defined by apparel and accessories that are "fashion-forward", "stylish", "vintage", "casual", "active", and "rugged".  Elauf Dep. 130; Joachimsthaler Decl. ¶ 49.  The abercrombie brand mimics the preppy, casual, classic look of the Abercrombie & Fitch brand.  See Joachimsthaler Decl. ¶ 48, 94.

3.     The abercrombie brand targets pre-teens and young teens and communicates:

> The essence of privilege and prestigious East Coast prep schools, abercrombie directly follows in the footsteps of Abercrombie & Fitch. With a flirtatious and energetic attitude, abercrombie are popular, wholesome, and athletic.  Rugged and casual with a vintage inspired style, abercrombie aspire to be like their older sibling, Abercrombie & Fitch. The perfect combinations of maturity and mischief, abercrombie are the signature of all-American cool.

Joachimsthaler Decl. ¶ 48.

4.     Abercrombie does little to no advertising.  Riley Dep. 31.  Abercrombie's primary method of advertising its products is through its in-store experience, which includes the look and feel of the store, and most importantly, the store associates, who are called models.  Elauf Dep. 117; Riley Dep. 19.  Abercrombie's Models are its primary marketing tool, and a Model's primary job is to represent the Abercrombie brand to customers.  Riley Dep. 29-31.

5.     Abercrombie consistently conveys its "brand identity" through all aspects of the store, including visuals, fragrances, and Models.  Joachimsthaler Decl. ¶ 50; Riley Dep. 130. Because consistency in the in-store experience extends to the look and style of the Models, Models are required to follow Abercrombie's Look Policy.  Riley Dep. 18.  The Look Policy requires Models to wear clothing similar to what Abercrombie sells, and has further requirements regarding makeup, jewelry, and hair styles.  Joachimsthaler Decl. ¶ 83.

6.      The Look Policy is inherent to the Model's role and a major component of the in-store experience.  Riley Dep. 29-31.  Abercrombie's Look Policy "leads to a better in-store experience" and impacts a customer's decision to make purchases and return to an Abercrombie store in the future.  Riley Dep. 31.  As a result, abiding by the Look Policy and portraying a brand positive style are essential functions of a Model's job.  Joachimsthaler Decl. ¶ 82, 97; Lundquist Decl. ¶ 8.[3]

7.      Abercrombie informs both associates and applicants of the Look Policy.  See Cooke Dep. 134; Johnson Dep. 94.  Abercrombie informs applicants of the Look Policy when they apply at the electronic application kiosk, and also at the conclusion of the applicant's interview. Elauf Dep. 64-65; Cooke Dep. 78.  New associates must acknowledge their understanding of the Look Policy by signing the Look Policy when they are hired.  Cooke Dep. 134.  The Look Policy also appears in the Abercrombie employee handbook.  Cooke Dep. 134.  Abercrombie strictly enforces the Look Policy and Models who are not in compliance with the Look Policy are sent home.  Cooke Dep. 163-64.

8.      The Look Policy prohibits Models from wearing headwear because headwear is distracting from Abercrombie's style and clothing.  Joachimsthaler Decl. ¶ 97-98.  Although Abercrombie sells scarves, Abercrombie has never sold scarves intended to be worn as headwear.  See Joachimsthaler Decl. ¶ 98; Elauf Dep. 117.  The Look Policy also prohibits associates from wearing the color black on the sales floor.  Elauf Dep. 57; McJilton Dep. 49.

9.      On June 25, 2008, Samantha Elauf applied for a Model position at the abercrombie store in Woodland Hills Mall in Tulsa, Oklahoma.  Elauf Dep. 53.  Elauf decided to apply for a

---

[3]  Dr. Kathleen Lundquist is a nationally-known expert Industrial Organizational Psychologist retained by Abercrombie.  The Declaration of Dr. Lundquist is attached as Exhibit G and is referred to herein as "Lundquist Decl. __."

job with abercrombie because her friend, Farisa Sepahvand worked there as a Model.  Elauf Dep. 44-45, 47. Sepahvand told Elauf that Models were required to wear clothing similar to what Abercrombie sold.  Elauf Dep. 50.  Sepahvand also told Elauf that Abercrombie had a policy prohibiting Models from wearing black clothing.  Elauf Dep. 56-57.  Like Elauf, Sepahvand is Muslim.  Elauf Dep. 12.

10.    Prior to applying for a position with abercrombie, Elauf shopped at the Abercrombie store and was familiar with the type of clothing Abercrombie sold.  Elauf Dep. 47. She also knew that Abercrombie Models were supposed to wear clothing similar to what Abercrombie sold.  Elauf Dep. 50.  She also knew that Abercrombie did not sell headscarves. Elauf Dep. 117.

11.    Elauf is Muslim and testified that she wears a "hijab" as "a reminder of [her] faith." Elauf Dep. 40.  A "hijab" is a headscarf which is worn by some Muslim women.  Elauf Dep. 144; Deposition of Dr. Richard Esposito p. 38.[4]  A hijab covers the wearer's hair and can also cover some of the wearer's clothing.  Elauf Dep. 27, 119; Esposito Dep. 47-48.  A hijab is designed to be noticed by an observer and is, in fact, designed to be one of the first things noticed by an observer.  Elauf Dep. 122; Esposito Dep. 83-84.  It is an article of Islamic dress, and is inconsistent with the East Coast "preppy" style of clothing that abercrombie sells.  Elauf Dep. 152; Esposito Dep. 45; Joachimsthaler Decl. ¶ 95.  A hijab thus distracts from the Abercrombie brand.   Joachimsthaler Decl. ¶ 97-98; Elauf Dep. 123, 127; Riley Dep. 132.  Elauf conceded that she has never seen anyone working at Abercrombie wearing a headscarf.  Elauf Dep. 118.

---

[4] Dr. Richard Esposito is an expert witness hired by the EEOC and is one of the nation's foremost experts on Islam.  Esposito Dep. 24. Cited to pages of his deposition are attached as Exhibit H and referred to herein as "Esposito Dep. __."

12.   The Muslim Quran does not require Muslim women to wear headscarves, and many Muslim women do not wear headscarves.  Elauf Dep. 125, 30 – 35; Esposito Dep. 38.  In fact, several Muslim women in Elauf's family do not wear headscarves.  See Elauf Dep. 30-35.  Elauf believes that Muslim women who do not wear headscarves are still observant Muslims.  Elauf Dep. 121.  Indeed, Elauf's friend, Farisa Sepahvand, is Muslim and does not wear a headscarf.  Elauf Dep. 12, 45.

13.   Elauf "occasionally" attends services at her mosque.  Elauf Dep. 12.  Elauf estimates that she attends two of the fifty-two weekly services plus two holiday services each year provided she is not working, for a maximum of four services per year.  Elauf Dep. 13-15.

14.   Although the Muslim religion requires five <u>daily</u> prayers, Elauf testified that she prays "maybe" twice each <u>month</u>.  Elauf Dep. 38, 42.

15.   Heather Cooke, the Assistant Manager for the abercrombie store in Tulsa, interviewed Elauf for the Model position on June 27, 2008.  Elauf Dep. 53.

16.   Cooke used a pre-printed "interview guide" when she interviewed Elauf.  Cooke Dep. 60.  The interview guide provides a "Closing Statement" which includes a description of the Look Policy.  Cooke Dep. 78.  Cooke testified that she always read the closing statement in its entirety at the Model interview, including the information regarding the Look Policy.  Cooke Dep. 78.

17.   Elauf wore a black hijab at the interview.  Elauf Dep. 63.  Elauf did not indicate that she was wearing the hijab for religious reasons, did not ask Cooke if she could wear the hijab while working at abercrombie, and did not state that she was Muslim during the interview.  Elauf Dep. 63-65; Cooke Dep. 88.  Cooke asked Elauf if she had any questions at the end of the interview but Elauf did not ask any questions.  Elauf Dep. 63-64.

18.     At the time of the interview, Cooke did not know that Elauf was Muslim.  Cooke Dep. 153.  Although Cooke testified that she thought the headscarf indicated that Elauf might be Muslim, this was never confirmed by Elauf or anyone else.  Cooke Dep. 96.

19.     Cooke was concerned about hiring Elauf because she violated the Look Policy by: (1) wearing black clothing; and (2) wearing headwear.  Cooke Dep. 168-69.  Because she was uncertain whether she could hire someone who wore clothing prohibited by the Look Policy, Cooke contacted her District Manager Randall Johnson.  Cooke Dep. 169.

20.     Cooke testified that she told Johnson that she believed Elauf might be Muslim and that she believed Elauf might be wearing the headscarf for religious reasons.  Cooke Dep. 107-108.  Johnson, however, testified that Cooke never mentioned religion.  Johnson Dep. 86-87.  Either way, it is undisputed that Elauf never mentioned her religion to Cooke or Johnson, nor did she request a religious accommodation.  Elauf Dep. 63-65.

21.     Abercrombie trains managers not to make assumptions or ask questions about an applicant's religion. Riley Dep. 63.  When an applicant or employee requests a religious accommodation, the manager is instructed to contact Abercrombie's Human Resources Department.  Riley Dep. 32; Johnson Dep. 86, 71, 73.  When Abercrombie receives notice of a requested accommodation, Abercrombie evaluates the request, and where possible, recommends an accommodation.  Riley Dep. 113-14. All religious accommodation requests are evaluated on a case-by-case basis.  Riley Dep. 109-10, 113.

22.     Because Elauf did not comply with the Look Policy, Johnson instructed Cooke not to hire Elauf.  Johnson Dep. 44; Cooke Dep. 170.  Elauf was not hired because she was not in compliance with the Look Policy.  Johnson Dep. 51.

23.    Elauf was hired by Forever XXI on July 2, 2008, seven days after her interview at abercrombie.  Elauf Dep. 137.

## III.    ARGUMENT

### A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted if the moving party shows that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden to show that a genuine dispute exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The non-moving party must set forth facts sufficient to establish the existence of a genuine issue for trial.  Rocky Mountain Rogues, Inc. v. Town of Alpine, 375 Fed. Appx. 887, 891 (10th Cir. 2010).  Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The mere existence of "a scintilla of evidence" in support of the non-moving party's position is insufficient.  Id.  To survive a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

### B.    Abercrombie is Entitled to Summary Judgment on Plaintiff's Title VII Failure to Accommodate Claim.

To make a prima facie case of religious discrimination for failure to accommodate, the employee has the burden of showing that:  (1) the employee had a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this

belief; and (3) the employee was disciplined for failure to comply with the conflicting employment requirement.  Thomas v. National Association of Letter Carriers, 225 F. 3d 1149, 1155 (10th Cir. 2000).  If the employee establishes a prima facie case, the employer may still prevail by: (1) conclusively rebutting one or more elements of the plaintiff's prima facie case; (2) showing that it offered a reasonable accommodation; or (3) showing that it was unable reasonably to accommodate the employee's religious needs without undue hardship.  Id. at 1156.

In this case, the EEOC has failed to establish a prima facie case because Elauf did not inform Abercrombie of a religious belief that conflicted with Abercrombie's policies, nor did she ever request an accommodation.  Without notice that Elauf had a religious belief that conflicted with an employment policy, Abercrombie had no duty to offer an accommodation.

Assuming arguendo that the EEOC could establish a prima facie case of religious discrimination for failure to accommodate, Abercrombie is still entitled to summary judgment because Abercrombie can demonstrate that the accommodation the EEOC now requests would have caused an undue hardship.

## 1. The EEOC has not established a prima facie case because Elauf failed to notify Abercrombie that her religious beliefs conflicted with Abercrombie's policy.

The EEOC's claim fails because Elauf never notified Abercrombie of the conflict between her religious beliefs and Abercrombie's Look Policy.

The EEOC's Compliance Manual states that "an applicant . . . who seeks religious accommodation must make the employer aware both of the need for accommodation and that it is being requested due to a conflict between religion and work."  EEOC COMPLIANCE MANUAL, § 12-IV (A) (July 22, 2008).  According to the guidelines, the employee is "obligated to explain the religious nature of the belief or practice at issue, and cannot assume that the employer will

already know or understand it." Id.  While the manual states that no "magic words" are required

to meet the notice requirement, the manual does not contemplate silence as adequate notice.  Id.

The case law agrees with the EEOC's Compliance Manual.  "Public policy requires that

an employer be informed of the alleged conflict and be given the opportunity to make an

accommodation before being subjected to liability for religious discrimination."  Averett v.

Honda of America Mfg., 2010 U.S. Dist. LEXIS 11307, *29 (S.D. Ohio 2010).  The obligation

to accommodate only arises after the employee provides "fair warning of the employment

practices that will interfere with his religion."  Reed v. The Great Lakes Companies, 330 F. 3d

931, 935 (7th Cir. 2003).  Thus, the burden is on the employee to provide notice of the conflict

between the religious belief and the employer's policy.  See  Cary v. Carmichael, 908 F. Supp.

1334, 1343 (E.D. Va. 1995), aff'd, No. 95-3154, 1997 U.S. App. LEXIS 15168 (4th Cir. June 23,

1997) (employee "has the duty to inform his employer of his religious needs so that the employer

has notice of the conflict") (internal citation omitted); Cruzan v. Minneapolis Public School

System, 165 F. Supp. 2d 964, 967 (D. Minn. 2001), aff'd sub. nom. Cruzan v. Special Sch. Dist.

# 1, 294 F. 3d 981 (8th Cir. 2002) ("religious conflicts with employment must be communicated

to the employer in order to encourage satisfactory arrangements of reasonable accommodation").

Even if an employee is only aware of the possibility that her religious beliefs will conflict

with an employer policy, the employee must inform the employer of the potential conflict to

meet the notice requirement.  See Hussein v. The Pierre Hotel, 2001 U.S. Dist. LEXIS 4859

(S.D.N.Y. 2001), aff'd, No. 01-7673, 25 Fed. Appx. 84 (2d Cir. Feb. 7, 2002), cert. denied, 537

U.S. 978 (2002) (holding that plaintiff who knew of policy prohibiting beards at similar place of

employment was aware of likelihood that similar employer would not permit him to work

unshaven, and should have mentioned potential conflict).

Here, Elauf was informed that Abercrombie had dress requirements for the Model position on at least three occasions: first, by her friend Sepahvand before she applied; second, at the kiosk where she completed her job application; and third, during her interview by the interviewing manager.  Elauf Dep. 50, 65.  Elauf knew Abercrombie required Models to wear styles similar to the clothes Abercrombie sold, knew Abercrombie did not sell headscarves, and knew that associates were not allowed to wear black.  Elauf Dep. 50, 56-57, 65, 152.  Cooke asked Elauf if she had any questions at the end of the interview, but Elauf did not ask any questions, and never notified Abercrombie about her potential need for an accommodation. Elauf Dep. 63, 64.

It thus is undisputed that Elauf never informed Abercrombie that she might need a reasonable accommodation. Absent notice, Abercrombie had no opportunity or duty to accommodate Elauf.  Thus, the EEOC's claim fails.

In response to this indisputable evidence, the EEOC may argue that Assistant Manager Heather Cooke guessed that Elauf was Muslim, and based on that guess, Abercrombie had the burden to inquire further into Elauf's religious beliefs.[5]  However, under the EEOC's own guidelines, an employer is not required, nor <u>even permitted</u>, to inquire into an applicant's

---

[5] Even if Cooke guessed that Elauf was Muslim, this was inadequate to put Abercrombie on notice of a conflict, because knowledge that an employee is a particular religion does not give the employer knowledge of the religious activities in which an employee may engage.  <u>Chalmers v. Tulon Co.</u>, 101 F. 3d 1012, 1020 (4th Cir. 1996), <i>cert. denied</i>, 522 U.S. 813 (1997); <u>See also</u> <u>Baaqee v. Brock & Belving Construction Co.</u>, 2000 U.S. Dist. LEXIS 9862, *17-18 (S.D. Al. 2000) ("signs" that employee was Muslim, including that employee did not smoke or drink and wore Crescent Star ring symbolizing his religion, were insufficient to show employer had knowledge of plaintiff's religion); <u>Wilkerson v. New Media Technology Charter School Inc.</u>, 522 F. 3d 315, 319 (3d Cir. 2008) (notice was insufficient where employee merely informed employer that she was Christian because "simply announcing one's belief in a certain religion, or even wearing a symbol of that religion . . . does not notify the employer of the particular beliefs and observances that the employee holds in connection with her religious affiliation").

religious beliefs.  <u>See</u> Pre-Employment Inquiries and Religious Affiliation or Beliefs, http://eeoc.gov/laws/practices/inquiries_religious.cfm ("Questions about an applicant's religious affiliation or beliefs . . . are generally viewed as non job-related and problematic under federal law").  Indeed, a requirement that employers inquire into applicants' religious beliefs would leave employers "continually searching for each potential religious conflict of every employee." <u>See</u> <u>Cary v. Carmichael</u>, 908 F. Supp. 1334, 1344 (E.D. Va. 1995), *aff'd*, No. 95-3154, 1997 U.S. App. LEXIS 15168 (4th Cir. June 23, 1997) (employee must provide enough information to "permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements . . . any greater notice requirement would permit an employer to delve into the religious practices of an employee.") (internal citation omitted).

Elauf failed to provide notice to Abercrombie that she was Muslim or that she might need an accommodation.  Without notice, Abercrombie could not provide an accommodation.  An employer cannot possibly accommodate an employee who remains completely silent on his or her need for an accommodation.  A finding to the contrary would open the floodgates to religious accommodation lawsuits, and would also simultaneously subject employers to liability for inquiries into an employee's religious beliefs.

Given the undisputed facts, summary judgment in favor of Abercrombie is warranted.

### 2.   Even if Elauf had given notice, the only accommodation the EEOC requests creates an undue hardship.

Abercrombie further prevails as a matter of law for the separate reason that the accommodation the EEOC now requests would have created an undue hardship.

An employer must prevail as a matter of law if the employer cannot reasonably accommodate the employee's religious beliefs without "undue hardship on the conduct of the employer's business."  <u>Lee v. ABF Freight Sys.</u>, 22 F. 3d 1019, 1022 (10th Cir. 1994)  (Citing

42 U.S.C. 2000e(j)).  An accommodation which results in "more than a *de minimis* cost" is an undue hardship to the employer and the employer need not provide the accommodation.  <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 84 (1977).  Further, "undue hardship is not a difficult threshold to pass."  <u>Webb v. City of Philadelphia</u>, 562 F. 3d 256, 260 (3d Cir. 2009).

An undue hardship may result from both economic and non-economic costs.  <u>Webb</u>, 562 F. 3d at 260.  <u>See</u> <u>also</u> <u>Cloutier v. Costco Wholesale Corp.</u>, 390 F. 3d 126, 134 (1st Cir. 2004) ("*de minimis*" analysis "applies both to economic costs, such as lost business . . . and to non-economic costs, such as compromising the integrity of a seniority system"); <u>EEOC v. Geo Group, Inc.</u>, 616 F. 3d 265, 273 (3d Cir. 2010) (finding safety risk associated with wearing khimar constituted undue hardship);  <u>Sanchez-Rodriguez v. AT&T Wireless</u>, 728 F. Supp. 2d 31, 42 (D.P.R. 2010) (compromising scheduling system intended to accommodate shift preferences of employees constituted undue hardship).

Here, the EEOC argues that the only suitable accommodation is an exception to Abercrombie's Look Policy to allow Elauf to wear a headscarf.  Several courts have held that requests for exceptions from neutral dress policies create an undue hardship.  <u>See</u> <u>Cloutier v. Costco Wholesale Corp.</u>, 390 F. 3d 126, 136 (1st Cir. 2004) (finding "outright exemption" from a neutral dress code would result in an "undue hardship" because accommodation would "adversely affect the employer's public image."); <u>Webb v. City of Philadelphia</u>, 562 F. 3d 256 (accommodation that violated dress code resulted in undue hardship); <u>EEOC v. Kelly Services, Inc.</u>, 598 F. 3d 1022 (8th Cir. 2010) (permitting exception to strictly enforced dress policy prohibiting head coverings of any kind would result in undue hardship); <u>Daniels v. City of Arlington</u>, 246 F. 3d 500, 505 (5th Cir. 2001) (finding undue hardship where employee sought exemption from dress policy to wear religious pin); <u>EEOC v. Sambos  of Georgia, Inc.</u>, 530 F.

Supp. 86 (N.D. Ga. 1981) (employer was not required to exempt Sikh employee from appearance policy, even if "defendants' justification for the grooming standards amounted to nothing more than an appeal to customer preference . . . it is not the law that customer preference is an insufficient justification").

Permitting Elauf to violate the Look Policy would result in an undue hardship to Abercrombie because: (1) noncompliance with the Look Policy harms the Abercrombie brand; (2) an exception to the Look Policy would require Abercrombie to eliminate an essential function of the Models' job; and (3) an exception to the Look Policy would interfere with Abercrombie's ability to uniformly enforce the policy.

### a. Noncompliance with the Look Policy would harm the Abercrombie brand, and thereby create an undue hardship.

Abercrombie takes a distinctive approach to marketing its brand.  Rather than advertising through media or print advertisements, Abercrombie's primary source of marketing its brand is through the in-store experience and direct interaction with Abercrombie Models.  <u>See</u> Joachimsthaler Decl. ¶ 11.  Indeed, because employees are the "most obvious personal contact consumers have with the brand, everything they do, say, and wear communicates the brand, whether it is through appearance or behavior."  Joachimsthaler Decl. ¶ 75.

Abercrombie's Look Policy is "the core part" of the in-store experience and the strength of Abercrombie's brand is based on "adherence to the Look Policy."  Riley Dep. 29, 77.  Abercrombie strictly enforces the Look Policy in order to promote a coherent and consistent brand identity among its Models and stores.  Joachimsthaler Decl. ¶ 83, 89.  Deviation from even a single element of the Look Policy "can distort the desired brand effect and consumer perceptions," resulting in negative customer experiences, damage to the Abercrombie brand, and a decline in sales.  Joachimsthaler Decl. ¶¶ 90-92.  The negative experience not only affects the

14

customer's personal interpretation of the brand but spreads by word of mouth to the customer's friends and family who are likely to continue circulating the negative information.  Id. at ¶ 91. As Dr. Joachimsthaler asserted, "[a] store employee's incorrect portrayal of the brand . . . through . . . the wearing of an inappropriate clothing style, footwear, headgear or jewelry not representative of the brand – can have a negative impact on the brand because he/she is viewed by thousands of people in a given week." See Joachimsthaler Decl. ¶ 92.

Abercrombie's commitment to brand consistency is based in part on the fact that compliance with the Look Policy is directly correlated to customer experience and satisfaction, and as such, has a direct impact on store revenue and success.  See Joachimsthaler Decl. ¶ 91; Riley Dep. 31.  As Dr. Joachimsthaler's report indicates, negative store experiences are a "key cause of lost sales" in the area of "10% to 30% plus future lost sales due to shoppers switching retailers." Joachimsthaler Decl. ¶ 91.  In order to achieve continued success, Abercrombie must "ensure a flawless, 360 degree execution of the brand." Id. at ¶ 87.

Here, there can be little doubt that EEOC's requested exception, a hijab, is a substantial deviation from the Look Policy.  A hijab is a religious symbol and is Islamic dress, which is inconsistent with Abercrombie's casual preppy style of clothing.  As a result, a hijab is "off-brand" and completely distinct from Abercrombie's style. Elauf Dep. 151; Esposito Dep. 45; Joachimsthaler Decl. ¶ 98.

Furthermore, a hijab is designed to be noticed by an observer and is, in fact, designed to be one of the first things noticed by an observer.  A hijab also covers the hair and can cover the clothing.  As a result, a hijab is distracting from the style of clothing worn by the Models.  Elauf admitted that she intends for people to notice her headscarf and that if someone is going to look at her, "they're going to see it."  Elauf Dep. 123; Esposito Dep. 86.

The EEOC's requested exception is thus a significant deviation from the Look Policy, and would damage Abercrombie's careful branding efforts.  It would be similar to a requirement that a clothing retailer allow a fashion model to wear an off-brand hijab in a television commercial.

Although the EEOC may contend that Abercrombie's arguments regarding the potential damage to its brand are speculative because Abercrombie has not attempted to assign a specific monetary value to Elauf's requested Look Policy exception, courts have held that costs for accommodation need not be "ascertained with exactitude" to find undue hardship.  Cook v. Chrysler Corp., 981 F. 2d 336, 339 (8th Cir. 1991).  Moreover, courts have recognized that damage to a brand or brand confusion is significant.  A showing of the likelihood of confusion "supports a strong presumption of irreparable harm in trademark cases."  Anheuser-Busch, Inc. v. VIP Products, LLC, 666 F. Supp. 2d 974, 986 (E.D. Mo. 2008).  The burden of accommodating Elauf, though not precisely quantifiable, is unquestionably real.

Allowing Elauf to wear a hijab would cause her to be conspicuously "off-brand," and cause brand confusion to consumers.  This would have resulted in more than a *de minimis* cost, and thus would have created an undue hardship.

**b.   Making an exception to the Look Policy would require Abercrombie to eliminate an essential function of the Model position.**

An accommodation is unreasonable if it requires the employer to eliminate an essential function of the job.  Mason v. Avaya Communs., Inc., 357 F. 3d 1114, 1123 (10th Cir. 2004); See also E.E.O.C. v. Convergys Customer Management Group, Inc., 491 F. 3d 790, 796 (8th Cir. 2007) (citing Buckles v. First Data Res., Inc., 176 F. 3d 1098, 1102 (8th Cir. 1999) (finding "an accommodation is unreasonable if it requires the employer to eliminate an essential function of

the job").  The employer, not the employee, defines the essential functions of the job.  Id. at

1122.

In 2005, Abercrombie hired expert industrial psychologist, Kathleen Lundquist to

perform a job analysis of the Model position to establish accurate job descriptions and to develop

interview questions which could be consistently applied in the hiring process.  See Lundquist

Decl. ¶ 7.  Dr. Lundquist determined that a Model's adherence to the Look Policy is an "essential

function" of the Model position because the Models are hired for the purpose of representing the

Abercrombie brand in "appearance and sense of style."  Lundquist Decl. ¶ 8.  Because the

Models' core role is to model the Abercrombie style and clothing, any apparel or accessory that

detracts from this style is prohibited.  See Riley Dep. 107.

There are simply some tasks which are absolutely essential to the performance of a

particular job.  To be employed as a truck driver, one must be able to drive.  To be employed as a

typist, one must be able to type.  To be employed as a Model at Abercrombie, one must wear the

Abercrombie style.  Lundquist Decl. ¶ 16.

The only accommodation acceptable to the EEOC would result in noncompliance with

the Look Policy and an inability to properly perform an essential function of the Model job.

Thus, the requested accommodation would have created an undue hardship.

### c.  Allowing an exception to the Look Policy would interfere with enforcement of the Policy.

Noncompliance with the Look Policy affects Abercrombie's ability to uniformly enforce

the Policy.  See Riley Dep. 179.  Employees who notice a coworker's unpunished deviation from

the Look Policy will perceive Abercrombie's acquiescence in the deviation and thus will be

inclined to similarly violate the Look Policy because they.  See Cloutier, 390 F. 3d at 137 (when

employer allows exception from dress code, the employer "forfeits its ability to mandate

17

compliance and thus loses control over its public image . . .  that loss . . . would constitute an undue hardship").  <u>See</u> <u>also</u> Riley Dep. 179.

One need look no further than the depositions of the former Abercrombie employees in this case to appreciate the significance of a single deviation from the Look Policy.  Here, Kalen McJilton testified that while working at a California Abercrombie store several years before relocating to the Tulsa abercrombie store, he observed a coworker wear a yarmulke on two occasions.  McJilton Dep. 75-78.  McJilton told Cooke and Sepahvand about the yarmulke, with the end result that Elauf testified at her deposition that Abercrombie should have allowed her to wear a hijab.  <u>See</u> Elauf Dep. 74;  Cooke Dep. 117.  Word of this single deviation, observed only twice, traveled half-way across the country and years later led other employees to assume that Abercrombie would permit similar violations of the Look Policy.

Deviations from the Look Policy lead to confusion and affect Abercrombie's ability to enforce the Look Policy, resulting in an inability to control the company's image. Joachimsthaler Decl. ¶ 93.  Courts have recognized that making an exception to a dress code makes enforcement of the code exceedingly difficult.  <u>Cloutier</u>, 390 F.3d at 137.  Permitting Elauf to wear a headscarf in violation of the Look Policy would hinder Abercrombie's ability to uniformly enforce the Look Policy, which would create an undue hardship.

**IV.**    **CONCLUSION**

Based on the foregoing facts and authorities, the Court should enter summary judgment in favor of Abercrombie on the EEOC's claim of religious discrimination due to failure to accommodate.

Respectfully Submitted,

*s/ Mark A. Knueve*
Mark A. Knueve (Ohio Bar No. 0067074)
Daniel J. Clark (Ohio Bar No. 0075125)
Joseph C. Fungsang (Ohio Bar No. 0085751)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6387 (phone)
(614) 719-4808 (facsimile)
maknueve@vorys.com (e-mail)
djclark@vorys.com (e-mail)
jfungsang@vorys.com (e-mail)

*Admitted Pro Hac Vice*

Kristen L. Brightmire, OBA No. 14239
DOERNER, SAUNDERS, DANIEL &
ANDERSON, LLP
Williams Center Tower II
Two West Second Street, Suite 700
Tulsa, OK 74103-3725
(918) 591-5204 (phone)
(918) 925-5204 (fax)
kbrightmire@dsda.com (e-mail)

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 15, 2011, a copy of the foregoing Defendant's Motion For Summary Judgment and Memorandum in Support of Defendant's Motion for Summary Judgment was filed electronically with the Court.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Service will be made by operation of that system upon:

Jeff A. Lee
Equal Employment Opportunity Commission
Area Office of the State of Oklahoma
215 Dean A. McGee Ave.
Suite 524
Oklahoma City, OK 73102
JEFF.LEE@EEOC.GOV

Barbara A. Seely
Equal Employment Opportunity Commission
St. Louis District Office
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
BARBARA.SEELY@EEOC.GOV

Natasha L. Abel
Equal Employment Opportunity Commission
801 Market St., Suite 1300
Philadelphia, PA 19107

Jennifer L. Hope
Equal Employment Opportunity Commission
801 Market St., Suite 1300
Philadelphia, PA 19107

*s/ Joseph C. Fungsang*
Joseph C. Fungsang
