**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 09-CV-602-GKF-FHM ) |
| ABERCROMBIE & FITCH STORES, Inc., an Ohio Corporation, d/b/a AbercrombieKids, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PUNITIVE DAMAGES**

Pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, Abercrombie and Fitch Stores, Inc. ("Abercrombie" or "Defendant) respectfully moves this Court for an Order excluding any evidence, testimonial or documentary, offered by the Equal Employment Opportunity Commission ("Plaintiff") relating to a claim for punitive damages.

A brief Memorandum in Support of this Motion is attached.

Respectfully Submitted,

*s/ Mark A. Knueve*
Mark A. Knueve (Ohio Bar No. 0067074)
Daniel J. Clark (Ohio Bar No. 0075125)
Joseph C. Fungsang (Ohio Bar No. 0085751)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6387 (phone)
(614) 719-4808 (facsimile)
maknueve@vorys.com (e-mail)
djclark@vorys.com (e-mail)
jfungsang@vorys.com (e-mail)
*Admitted Pro Hac Vice*

Kristen L. Brightmire, OBA No. 14239
DOERNER, SAUNDERS, DANIEL &
ANDERSON, LLP
Williams Center Tower II
Two West Second Street, Suite 700
Tulsa, OK 74103-3725
(918) 591-5204 (phone)
(918) 925-5204 (fax)
kbrightmire@dsda.com (e-mail)

Attorneys for Defendant

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff alleges that Abercrombie violated the religious accommodation requirement of the Civil Rights Act of 1964 by failing to hire Samantha Elauf because she wore a black head scarf to her employment interview, and by failing to make an exception to its Look Policy, which prohibits headwear and the color black.  Defendant denies Plaintiff's allegation and contends that Elauf failed to request any religious accommodation or make her religious beliefs known at the time of the employment interview, and that the accommodation Elauf now claims she should have received would have created an undue hardship on Abercrombie's business.

Plaintiff has indicated an intention to pursue an award of punitive damages.  See Complaint at 4 ¶ E.  Based on the high standard for awarding punitive damages and the undisputed facts in this matter, this request would be unfairly prejudicial to Abercrombie and would result in a high likelihood of jury confusion.  Accordingly, Abercrombie requests an Order prohibiting Plaintiff from presenting arguments or evidence in support of punitive damages at trial in this matter.

**II.    LAW AND ANALYSIS**

   **A.    Legal Standard.**

Rule 401 of the Federal Rules of Civil Procedure provides that evidence is "relevant" to a plaintiff's claim if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Evidence that is not relevant should be excluded under Rule 402 of the Federal Rules of Evidence.  Rule 403 of the Federal Rules of Evidence states, in relevant part:  "Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion, or misleading the jury."

> **B.** **There Is No Evidence of Malice or Reckless Indifference on the Part of Defendants.**

Even if Plaintiff is able to prevail on its claim at trial, Plaintiff is not automatically entitled to an award of punitive damages. Indeed, in Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534-35 (1999), the Supreme Court found that to be liable for punitive damages, "[t]he employer must act with 'malice or reckless indifference to the [plaintiff's] federally protected rights.' The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." The Tenth Circuit has adopted this standard, noting that "the proper question is whether the employer engaged in the conduct alleged with the 'knowledge that it may be acting in violation of federal law.'" E.E.O.C. v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1245 (10th Cir. 1999) (quoting Kolstad, 527 U.S. at 536)); see also Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 914 (10th Cir. 2004) (affirming that an award of punitive damages was not warranted because the employer did not display the requisite malice or knowledge that it was acting in violation of the law).

The record in this case demonstrates a complete lack of malice or reckless indifference by Abercrombie. Ms. Elauf admitted that she neither requested a religious accommodation to wear a head scarf nor mentioned her religion or head scarf during her employment interview. Elauf Dep. at 63, 65.[1] As a result, Abercrombie had no opportunity to activate its comprehensive process for addressing requests for religious accommodation. See Riley Dep. at 109-15; Yoakum Dep. at 59.[2]

---

[1] The cited to pages of Samantha Elauf's deposition are attached as Exhibit A and are referred to herein as "Elauf Dep. at __."
[2] The cited to pages of Deon Riley's deposition are attached as Exhibit B and are referred to herein as "Riley Dep. at __." The relevant pages of Amy Yoakum's deposition are attached as Exhibit C and are referred to herein as "Yoakum Dep. at __."

4

Although Assistant Manager Heather Cooke testified that she told District Manager Randall Johnson she <u>assumed</u> Ms. Elauf might be Muslim (<u>see</u> Cooke Dep. at 97; 107-08),[3] Mr. Johnson, who made the ultimate decision not to hire Ms. Elauf, testified that he had no knowledge that Ms. Elauf wore a head scarf because of her religious beliefs. <u>See</u> Johnson Dep. at 44-45; 86-87.[4]  It is undisputed that Ms. Elauf never requested an accommodation, and Johnson never informed Abercrombie's Human Resources department about Ms. Elauf.  Johnson testified that had he known there was a request for religious accommodation, he would have, pursuant to his training, contacted Abercrombie's Human Resources department to determine if an accommodation could be made. <u>See id.</u> at 68-69; 72-73.  Accordingly, Abercrombie's corporate office was not aware of the head scarf until Ms. Elauf and the Council on American-Islamic Relations ("CAIR") publicized the issue in the media. <u>See</u> Johnson Dep. at 54-56; Yoakum Dep. at 13.

Abercrombie's corporate office thus had no knowledge of a potential request for religious accommodation, and cannot be held liable for punitive damages. <u>See</u> <u>Kolstad</u>, 527 U.S. at 535 (malice and reckless indifference require the "employer's knowledge that it may be acting in violation of federal law"). In <u>Buonanno v. Broadband, LLC</u>, the relevant manager's "hasty decision" to terminate the plaintiff "prevented high-ranking [company] officials from giving the matter additional, informed consideration." <u>Buonanno v. Broadband, LLC</u>, 313 F. Supp. 2d 1069, 1086 (D. Colo. 2004).  The district court in that case noted that the plaintiff was "partially responsible for the lack of communication" because he "failed to specifically explain the nature of the conflict between his religious beliefs and [the employer's policies]." <u>Id.</u>  The court found

---

[3] The cited to pages of Heather Cooke's deposition are attached as Exhibit D and are referred to herein as "Cooke Dep. at __."

[4] The cited to pages of Randall W. Johnson's deposition are attached as Exhibit E and are referred to herein as "Johnson Dep. at __."

that because both the plaintiff and the manager contributed to the lack of communication, and because the manager acted without authority, punitive damages were inappropriate. Id.

Here, even assuming that Johnson knew that Ms. Cooke assumed Ms. Elauf was Muslim, he did not inform Abercrombie's Human Resources department about Ms. Elauf until after the decision to not hire Ms. Elauf had been made, and after the issue had become well-publicized. As a result, punitive damages cannot be awarded. Lacking evidence of malice and reckless indifference to support a punitive damages award, Plaintiff should not be permitted to argue for such damages. Such arguments will only serve to confuse the jury.

    **C.    Abercrombie's Good Faith Precludes an Award of Punitive Damages.**

For the purpose of punitive damages, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." Kolstad, 527 U.S. at 528. In Kolstad, the Supreme Court held that punitive damages cannot be awarded against a corporate defendant that makes good faith efforts to comply with Title VII, even when the conduct or decisions of an individual manager result in a violation of the statute. The Tenth Circuit has adopted this standard: "[I]n modifying the common law rules of vicarious liability to protect employers who make good faith efforts to comply with Title VII, the Court intended to encourage 'employers to adopt antidiscrimination policies and to educate their personnel on [federal] prohibitions' against workplace discrimination." E.E.O.C. v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1245 (10th Cir. 1999) (quoting Kolstad, 527 U.S. at 545).

In this case, Abercrombie made good faith efforts to comply with Title VII. Abercrombie maintains anti-discrimination and harassment policies. See Riley Dep. at 39-40, 43-59. Abercrombie's managers and Human Resources personnel are repeatedly trained on Title VII

6

compliance and on diversity matters.  See Riley Dep. at 39-40, 43-59.  Abercrombie's extensive efforts to educate its managers on its anti-discrimination policies include a manager-in-training program that addresses discrimination issues (id. at 50-55); live training twice per year for district managers, with additional training via teleconference (id. at 46-47); an annual training sweep that covers every manager in each of Abercrombie's stores (id. at 58); a monthly "411" informational notice that is sent to each store (id. at 45-46); and anti-discrimination policies that are posted in the backroom of each store (id. at 74).  Additionally, Abercrombie's Human Resources department has in place a comprehensive system for receiving and evaluating requests for religious accommodation.  See id. at 109-15.

Tellingly, in a lawsuit filed by the EEOC in 2008 against Abercrombie in the Eastern District of Missouri—also involving the religious accommodation process and Abercrombie's Look Policy—the court denied the EEOC's jury instruction referring to punitive damages.  See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., et al., No. 4:08-1470 (E.D. Mo. filed Sept. 25, 2008) (Doc. 71).  Given the considerable evidence that Abercrombie implemented "comprehensive policies and training procedures in good faith to comply with Title VII," this Court should exclude all evidence related a claim for punitive damages.  See Harsco Corp. v. Renner, 475 F.3d 1179, 1189 (10th Cir. 2007) (affirming district court's denial of punitive damages where company provided substantial evidence of anti-discrimination policies and training).

### D. Abercrombie's Reliance on Established Law Precludes an Award of Punitive Damages.

In Kolstad, the Supreme Court established that "[t]here will be some circumstances where intentional discrimination does not give rise to punitive damages liability under this standard…There will be cases, moreover, in which the employer discriminates with the

distinctive belief that its discrimination is lawful…an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability." Kolstad, 527 U.S. at 536-37.  In enforcing the Look Policy, Abercrombie relies on well-established statutory, regulatory, and case law authority establishing that an employer must reasonably accommodate the religious practices or an employee or prospective employee <u>unless</u> the accommodation would result in an undue hardship on the employer's business.  See Riley Dep. at 109; 42 U.S.C. § 2000e(j); Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149, 1155 (10th Cir. 2000) ("Title VII imposes an obligation on the employer 'to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business.'") (quoting 29 C.F.R. § 1605.2(b)(1), (2)); Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 136-37 (1st Cir. 2004) (affirming that "outright exemption" from neutral dress code would result in undue hardship because the accommodation would "adversely affect the employer's public image."); Webb v. City of Philadelphia, 562 F.3d 256, 261-62 (3d Cir. 2009) (affirming that accommodation that violated uniform dress code would result in undue hardship).

　　　　Allowing an exception to Abercrombie's Look Policy in this case would have resulted in an undue hardship on Abercrombie's business.  See Defendant's Memorandum in Support of Summary Judgment at III(B)(2).  Although Abercrombie makes every effort to accommodate religious accommodation requests (see Riley Dep. at 161-62), Abercrombie is entitled to deny accommodations that would cause an undue hardship on its business.  Because Abercrombie should not be penalized for its good faith reliance on a body of developed statutory, regulatory, and case law authority, punitive damages in this case are unwarranted, and any evidence relating

to punitive damages should be excluded.

### III. <u>CONCLUSION</u>

Based on the above-cited arguments and authorities, Defendants' Motion should be granted and this Court should enter an Order excluding any argument or evidence, testimonial or documentary, offered by Plaintiff relating to a claim for punitive damages.

Respectfully Submitted,

*s/ Mark A. Knueve*
Mark A. Knueve (Ohio Bar No. 0067074)
Daniel J. Clark (Ohio Bar No. 0075125)
Joseph C. Fungsang (Ohio Bar No. 0085751)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6387 (phone)
(614) 719-4808 (facsimile)
maknueve@vorys.com (e-mail)
djclark@vorys.com (e-mail)
jfungsang@vorys.com (e-mail)
*Admitted Pro Hac Vice*

Kristen L. Brightmire, OBA No. 14239
DOERNER, SAUNDERS, DANIEL &
ANDERSON, LLP
Williams Center Tower II
Two West Second Street, Suite 700
Tulsa, OK 74103-3725
(918) 591-5204 (phone)
(918) 925-5204 (fax)
kbrightmire@dsda.com (e-mail)

Attorneys for Defendant

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 15, 2011, a copy of the foregoing Defendant's Motion *in Limine* to Exclude Evidence of Punitive Damages was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Service will be made by operation of that system upon:

Jeff A. Lee
Equal Employment Opportunity Commission
Area Office of the State of Oklahoma
215 Dean A. McGee Ave.
Suite 524
Oklahoma City, OK 73102
JEFF.LEE@EEOC.GOV

Barbara A. Seely
Equal Employment Opportunity Commission
St. Louis District Office
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
BARBARA.SEELY@EEOC.GOV

Natasha L. Abel
Equal Employment Opportunity Commission
801 Market St., Suite 1300
Philadelphia, PA 19107

Jennifer L. Hope
Equal Employment Opportunity Commission
801 Market St., Suite 1300
Philadelphia, PA 19107

                                                *s/ Joseph C. Fungsang*
                                                Joseph C. Fungsang